FILED

DEC 1 1 2020

U.S. CLERK'S OFFICE
EVANSVILLE, INDIANA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. |
| | ) | 1:20-cr-342-SEB-MJD |
| DORIAN LACOURSE, | ) | |
| | ) | |
| Defendant. | ) | |

**INDICTMENT**

The grand jury charges that:

**COUNT ONE**
**Conspiracy to Defraud the United States and Make False Statements to Federal Firearms**
**Licensee and Bureau of Alcohol Tobacco Firearms and Explosives**
**18 U.S.C. § 371**

1.     Beginning in or before October 2015 and continuing through in or around May 2019, in the Southern District of Indiana and elsewhere, the defendant

**DORIAN LACOURSE,**

did knowingly and willfully combine, conspire, confederate, and agree with Johnathan Marcum and Christopher Petty, to do the following:

a.     to defraud the United States, namely the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), an agency of the United States, by interfering with and obstructing the lawful government functions of the ATF to limit the purchase, sale, transfer, and importation of machine guns for purchase by or demonstration for military and law enforcement agencies only, and to correctly identify the actual purchaser of machine guns which were restricted to military and law enforcement agencies only;

b.       to knowingly and willfully make and cause to be made false statements and representations with respect to information, under Chapter 44 of Title 18 of the United States Code, required to be kept in the records of individuals licensed under Chapter 44, relating to the acquisition of firearms, in violation of Title 18, United States Code, Section 924(a)(1)(A); and

c.       to knowingly and willfully make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, namely the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writing and documents, namely letters on Addyston Police Department letterhead requesting firearm demonstrations of machine guns (demonstration letters) from Dorian LACOURSE, knowing the same to contain a material false, fictitious, or fraudulent statement because Dorian LACOURSE knew that in fact no demonstration was going to occur, in violation of Title 18, United States Code, Section 1001(a)(2).

## **Background**

At times material to this Information:

### *Relevant Individuals and Entities*

1.       **DORIAN LACOURSE** was a sworn law enforcement officer with the Addyston Police Department in Addyston, Ohio, and served as its Chief of Police from approximately 2013 to 2020.

2.       **Addyston, Ohio** was a village in southwestern Ohio with a population of approximately 1,000 residents.

3.       **Addyston Police Department** was the municipal law enforcement agency for the Village of Addyston, Ohio.   The Addyston Police Department had approximately 10 or fewer sworn officers, most of which served in a part-time or "reserve" capacity.

4.      **Johnathan Marcum**, a resident of Laurel, Indiana, was the principal owner and operator of firearms-related businesses, namely "Marcum Firearms", "Marcum MFG (Manufacturing)", and "Police Supply Armory", all of which were based in Laurel, Indiana, which is in the Southern District of Indiana.   Marcum and his businesses together held up to four (4) Federal Firearms Licenses with Special Occupational Tax ("FFL/SOT"), which allowed them to possess and deal in fully automatic firearms (machine guns) regulated by the National Firearms Act, Title 26, United States Code, Section 5801 et seq. and the Gun Control Act, Title 18, United States Code, Section 921 et. seq.

5.      **Christopher Petty,** a resident of Lawrenceburg, Indiana, was the principal owner and operator of firearms-related businesses, namely "Tri-State Guns and Custom Works" and "Tri State Firearms LLC", both of which were based in or around Lawrenceburg, Indiana, which is in the Southern District of Indiana.   Petty and his businesses together held up to two (2) FFL/SOT licenses.

6.      **Heckler and Koch ("H&K")** was a firearms manufacturer based in Germany that produced, among other things, fully automatic machine guns.   H&K's U.S.-based subsidiary companies facilitated its sales to U.S. customers.   In light of German firearms regulations, H&K sold its machine guns only to governmental entities, namely the U.S. military and law enforcement agencies.   To import a machine gun into the United States, H&K required documentation from a purchaser that attested to the "end use" of the machine gun being for government or law enforcement purposes only.

### *Federal Law Concerning Machine Guns*

7.      Federal law restricted the purchase, sale, possession, and importation of fully automatic machine guns manufactured after 1986 ("machine guns") to uses by or related to the

3

military or law enforcement agencies.   Machine guns may be purchased, possessed, and imported directly by the military or law enforcement agencies.   Additionally, machine guns may be purchased, possessed, and imported by an FFL/SOT for use as a sample for demonstration to potential military or law enforcement agency purchasers.

8.      The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") was an agency within the Executive Branch of the government of the United States that, among other things, administered and enforced federal law concerning the purchase, sale, transfer, importation, and registration of machine guns.   Any purchase, sale, transfer, or importation of a machine gun must first be approved by the ATF National Firearms Act Division ("ATF NFA Branch").   Those who seek to purchase, sell, transfer, and/or import a machine gun in the United States must submit documentation to the ATF NFA Branch that identifies, among other things, the actual individuals or entities purchasing/selling, transferring/receiving, or importing/exporting the machine gun.

9.      In addition, to obtain a machine gun as a sample for demonstration to potential military or law enforcement agency purchasers, an FFL/SOT must provide the ATF NFA Branch with an application containing, among other things, a letter from a governmental entity expressing a need for a particular model or interest in seeing a demonstration of a particular weapon ("demonstration letter").   ATF NFA Branch would not approve a transfer of a machine gun to an FFL/SOT without a demonstration letter.   ATF NFA Branch will approve up to two (2) machine gun samples of a particular model and caliber for possession by, transfer to, and/or importation by a particular FFL/SOT for demonstration purposes.

10.      Finally, federal law required FFL/SOTs who purchased, sold, transferred, imported, or possessed machine guns to keep and maintain records related to their acquisition and disposition of machine guns.

**Purpose of the Conspiracy**

11.     It was the purpose of the conspiracy to acquire machine guns by means of fraud and materially false statements and representations, and to re-sell them for profit.

**Manner and Means of the Conspiracy**

*Overview*

12.     Between approximately October 2015 and May 2019, the co-conspirators acquired, and attempted to acquire, machine guns by purporting to comply with federal law concerning the law enforcement exceptions to the general prohibition on purchases, sales, and importation of machine guns.   The co-conspirators drafted, completed, signed, and submitted documentation to the ATF NFA Branch and other FFL/SOTs that falsely claimed that the Addyston Police Department either (a) intended to purchase machine guns for its own use, or (b) intended to receive a demonstration of machine guns purchased by Marcum and Petty for possible future purchase by the Addyston Police Department.   Based on such statements and representations, the ATF NFA Branch approved the purchases, sales, and importation of approximately 200 machine guns.

13.     These statements and representations were materially false and misleading because, as the co-conspirators well knew, the Addyston Police Department did not intend to purchase machine guns or receive demonstrations of machine guns.   Rather, the co-conspirators intended to, and did, acquire machine guns so that Marcum and Petty could re-sell them for profit.

14.     LACOURSE was paid a portion of the profits for his role in the scheme, which he represented to Marcum would be a "donation" to the Addyston Police Department.   LACOURSE requested, however, that checks be made out to him personally instead of to the Department or Village of Addyston.   In all, Marcum wrote approximately eleven (11) checks to LACOURSE, which totaled approximately $11,500, of which all but one were cashed.

*Machine Guns Purportedly Purchased by and Transferred to the Addyston Police Department*

15.     On at least four occasions during the relevant time period, the co-conspirators sought to and did acquire machine guns in the name of the Addyston Police Department knowing that the Addyston Police Department was not the true purchaser and transferee of these machine guns.   In reality, these machine guns were purchased by and/or transferred to Marcum and Petty for the purpose of reselling them at a profit.

16.     In acquiring the machine guns, the co-conspirators caused applications for importation and/or transfer of the machine guns to be submitted to the ATF NFA Branch falsely listing the Addyston Police Department as the purchaser or "transferee".

17.     Specifically regarding two purchases of machine guns from H&K, which could only sell to the military or law enforcement agencies, the co-conspirators created documentation on Addyston Police Department letterhead, which was signed by LACOURSE, that falsely represented that the H&K machine guns would be purchased by the Addyston Police Department with department funds, that the machine guns would be used by the Addyston Police Department in carrying out its law enforcement duties, and that Addyston Police Department was the "final end-user" of the machine guns and that their "end use" was for "U.S. government" or "law enforcement" purposes.

18.     For two other purchases of machine guns, one from the Virginia State Police and the other from firearm manufacturer FN America, the co-conspirators falsely stated that the Addyston Police Department was the transferee of the machine guns.

19.     Based on the representation that the purchase was for a law enforcement agency, the ATF NFA Branch approved the importation and/or transfer of these machine guns, as follows:

| Approximate Date of Approval | Type and Quantity of Machine Guns | Seller (Transferor) | Purchaser (Transferee) |
|---|---|---|---|
| October 31, 2016 (importation) <br><br> January 11, 2017 (transfer) | Eight (8) H&K MP7A1 Submachineguns | Heckler & Koch Defense, Inc. | Addyston Police Department |
| December 10, 2017 (transfer) | Eight (8) H&K MP5A3 Submachineguns | Virginia State Police | Village of Addyston Police Department |
| May 24, 2017 (importation) <br><br> May 22, 2018 (transfer) | Ten (10) H&K MP7A2 Submachineguns | Heckler & Koch Defense, Inc. | Addyston Police Department |
| September 21, 2018 (transfer) | Four (4) FN P90 Submachineguns | FN America LLC | Addyston Police Department |

20.     Also, in acquiring the machine guns, the co-conspirators caused false entries listing the Addyston Police Department as the "transferee" of these machine guns to be made by individuals and companies required to keep such records under Chapter 44 of Title 18 of the United States Code.

21.     The machine guns were shipped to the Addyston Police Department, and upon receipt, LACOURSE would notify Marcum and/or Petty, who would retrieve them from the department.

22.     The co-conspirators also created documentation that falsely stated that these machine guns were in the possession of Marcum and/or Petty only temporarily for the purpose of repairing them.   This documentation was not submitted to the ATF NFA Branch but rather was maintained by Marcum and Petty for the purpose of explaining to the ATF or other regulators why machine guns that they purportedly did not own were nonetheless in their possession.

23.     Marcum and Petty marketed and sold 22 of the 30 machine guns acquired in the name of the Addyston Police Department.   In some instances, particularly with regard to the

machine guns purchased from H&K, Marcum received five or six times the amount he paid for the guns.

24.     Among the eight machine guns that were not sold by the time the conspiracy ended were the four FN P90 submachineguns approved for transfer on or about September 21, 2018. Although Marcum had paid for these machine guns and intended to sell them, following inquiries from the ATF NFA Branch in 2018 regarding the Addyston Police Department, Marcum converted these machine guns to semi-automatic and gave them to LACOURSE at the Addyston Police Department.

### *False Demonstrations to the Addyston Police Department*

25.     On multiple occasions during the relevant time period, the co-conspirators sought to and did acquire machine guns by falsely representing that the machine guns would be used as samples for demonstration to the Addyston Police Department.   In reality, these machine guns were purchased by and/or transferred to Marcum and Petty for the purpose of reselling them at a profit.

26.     In acquiring the machine guns, the co-conspirators created over 100 letters on Addyston Police Department letterhead, which were signed by LACOURSE, that falsely requested firearm demonstrations of various machine guns for the department ("demonstration letters").   Among other things, these demonstration letters falsely represented that Addyston Police Department requested a demonstration of the listed machine guns because they were "particularly suitable for law enforcement" and were being evaluated for "possible future purchase and use of our officers in the performance of their official duties."   In reality, as LACOURSE and the other co-conspirators well knew, no demonstration was going to occur,

and the Addyston Police Department and Village of Addyston, Ohio had no intention of purchasing machine guns.

27.     On multiple dates during the relevant time period, the false demonstration letters were submitted to the ATF NFA Branch along with an application for transfer of machine guns to the FFL/SOT licenses held by Marcum, Petty, or their businesses.

28.     To obtain and re-sell greater quantities of machine guns than permitted by the ATF NFA Branch's limit of two demonstration samples of a particular model and caliber per FFL/SOT license, the co-conspirators created and submitted demonstration letters for the same model and caliber of machine gun from each of Marcum's, Petty's, and their businesses' various FFL/SOT licenses.   Marcum made payments to Petty for machine guns acquired through the scheme through one of Petty's businesses' FFL/SOT licenses.

29.     Based on the representations in the demonstration letters, the ATF NFA Branch approved the transfer of these machine guns to Marcum, Petty, and/or their businesses.

30.     In total, the co-conspirators obtained approximately 200 machine guns using false demonstration letters.   Marcum and Petty marketed most of these machine guns for sale, and they ultimately sold approximately 100 of them.

31.     For several of the machine guns, Marcum arranged for them to be transferred again to another FFL/SOT, which operated a gun rental and shooting range, and which would pay Marcum a portion of the rental income.   Marcum obtained another "demonstration letter" on Addyston Police Department letterhead, signed by LACOURSE, to transfer the same machine guns previously transferred to Marcum to the shooting range.

32.     The types of machine guns that the co-conspirators obtained and sold through the use of false demonstration letters included various military-grade machine guns, including but not limited to:

a.      A M2HB QCB machine gun, which is a 12.7mm (.50 caliber) belt-fed heavy machine gun, which is for military use, is vehicle- or ship-mounted, and is noted to be effective against infantry, unarmored or lightly armored vehicles, light fortifications, and low-flying aircraft;

b.      Multiple M249SAW (Squad Automatic Weapon) machine guns, which are 5.56mm belt-fed machine guns with built-in bi-pod for military use; and

c.      Multiple SCAR-16 machine guns, which are fully automatic assault rifles for military use.

### Overt Acts

In furtherance of the conspiracy, one or more of the co-conspirators committed the following overt acts, among others:

### *First Purchase of Machine Guns from H&K*

33.     On or about August 4, 2016, in the Southern District of Indiana and elsewhere, Marcum drafted and LACOURSE signed a letter on Addyston Police Department letterhead, which was sent to H&K Distributor 1 requesting Addyston Police Department's purchase of eight H&K MP7A1 submachineguns.    The letter falsely stated, among other things, that "[t]his order is being paid for with funds that our department is authorized to use under law for the acquisition of equipment", and that "[t]hese firearms will be the property of department and are not being acquired for the purpose of resale or transfer, and they will be used to carry out its official responsibilities and duties."

34.     On or about August 9, 2016, in the Southern District of Indiana and elsewhere, Marcum drafted and LACOURSE signed a document on Addyston Police Department letterhead titled "End User Certificate (EUC)," which was addressed to Heckler & Koch GmbH in Germany. The document stated that it was "for presentation to the Export Control Authorities of the Federal Republic of Germany".   The document falsely stated, among other things, that the purpose of the machine guns was "U.S. Government" and that the Addyston Police Department was the "final end-user of the goods."

35.     On or about August 26, 2016, in the Southern District of Indiana and elsewhere, Marcum drafted and LACOURSE signed a letter on Addyston Police Department letterhead addressed to Marcum "dba Marcum Firearms" in Indiana requesting the Addyston Police Department's purchase of eight H&K MP7A1 submachineguns.   The letter falsely stated, among other things, that "eight units has [sic] been requested to accommodate the simultaneous evaluation by two personnel from our organization."

36.     The above-described false documentation prepared and submitted by Marcum and LACOURSE caused H&K to submit, and for ATF NFA Branch to approve, an application for importation of firearms (ATF Forms 6 and 6A) and an application for tax free transfer of a firearm (ATF Form 5) for the eight H&K MP7A1 submachineguns.   The application for importation, which was approved on or about October 31, 2016, falsely stated that the "specific purpose of importation including final recipient" was "for Addyston Police Department, Addyston, OH . . . pending sale to LE or governmen[t]".   The application for tax free transfer of a firearm, which was approved on or about January 11, 2017, falsely stated that the transferee was the Addyston Police Department, which was denoted as a "governmental entity".   The application included H&K MP7A1 submachinegun with serial number 164-021399.

37.     After receiving the shipment of MP7A1 submachine guns on or about January 30, 2017, LACOURSE contacted Marcum to retrieve the machine guns, which he did and transported them into the Southern District of Indiana.

38.     On or about January 31, 2017, in the Southern District of Indiana and elsewhere, Marcum drafted and LACOURSE signed a letter on Addyston Police Department letterhead, addressed to Marcum, that falsely stated that the machine guns were in Marcum's possession for repair or testing purposes.

39.     On or about February 4, 2017, in the Southern District of Indiana and elsewhere, Marcum placed the first of multiple advertisements on the internet for the sale of the H&K MP7A1 submachineguns.

40.     On or about February 24, 2017, in the Southern District of Indiana and elsewhere, Marcum paid by check approximately $14,282.00 to H&K Distributor 1 for the eight H&K MP7A1 submachineguns.

41.     On or about June 6, 2017, in the Southern District of Indiana and elsewhere, Marcum prepared and submitted an application for tax free transfer of a firearm (ATF Form 5), which LACOURSE signed and ATF NFA Branch approved, to transfer the H&K MP7A1 submachinegun serial number 164-021399 from the Addyston Police Department to Buyer 1.

42.     On or about June 12, 2017, Marcum deposited into MainSource Financial Group account x7019 a check from Buyer 1 in the amount of $5,000.00 for one-half of the purchase price of H&K MP7A1 submachinegun serial number 164-021399, which Marcum sold to Buyer 1.

43.     On or about July 21, 2017, Marcum shipped the H&K MP7A1 submachinegun serial number 164-021399 from the Southern District of Indiana to Buyer 1 in Iowa.

44.     On or about August 4, 2017, Marcum deposited into MainSource Financial Group account x7019 another check from Buyer 1 in the amount of $5,000.00 for the other half of the purchase price of H&K MP7A1 submachinegun serial number 164-021399, which Marcum had sold to Buyer 1.

### *Second Purchase of Machine Guns from H&K*

45.     On or about March 16, 2017, Marcum drafted and LACOURSE signed a letter on Addyston Police Department letterhead, which was sent to H&K Distributor 1, requesting Addyston Police Department's purchase of ten H&K MP7A2 submachineguns.   The letter falsely stated, among other things, that "[t]hese firearms are for the exclusive law enforcement use of Addyston Police Department and are not for resale."

46.     On or about March 21, 2017, Marcum drafted and LACOURSE signed another letter on Addyston Police Department letterhead, which was sent to H&K Distributor 1, requesting Addyston Police Department's purchase of ten H&K MP7A2 submachineguns.   The letter falsely stated, among other things, that "[t]his order is being paid for with funds that our department is authorized to use under law for the acquisition of equipment", and that "[t]hese firearms will be the property of department and are not being acquired for the purpose of resale or transfer, and they will be used to carry out its official responsibilities and duties."

47.     On or about April 4, 2017, Marcum drafted and LACOURSE signed a document on Addyston Police Department letterhead titled "End User Certificate (EUC)," which was addressed to Heckler & Koch GmbH in Germany.   The document stated that it was "for presentation to the Export Control Authorities of the Federal Republic of Germany".   The document falsely stated, among other things, that the purpose of the machine guns was "Law Enforcement" and that the Addyston Police Department was the "final end-user of the goods."

48.     The above-described false documentation prepared and submitted by Marcum and LACOURSE caused H&K to submit, and for ATF NFA Branch to approve, an application for importation of firearms (ATF Forms 6 and 6A) and an application for tax free transfer of a firearm (ATF Form 5) for the eight H&K MP7A1 submachineguns.   On or about May 24, 2017, Marcum and LACOURSE caused H&K to submit, and for ATF NFA Branch to approve, an application for importation of firearms (ATF Forms 6 and 6A) for the ten H&K MP7A2 submachineguns. The application for importation, which was approved on or about May 24, 2017, falsely stated that the "specific purpose of importation including final recipient" was "to be imported for the Village of Addyston Police Department, Addyston, OH".   The application for tax free transfer of a firearm, which was approved on or about May 22, 2018, falsely stated that the transferee was the Addyston Police Department, which was denoted as a "governmental entity".   The applications included H&K MP7A2 submachinegun with serial number 164-027666.

49.     After receiving the shipment of MP7A1 submachine guns on or about May 24, 2018, LACOURSE contacted Marcum to retrieve the machine guns, which he did and transported them into the Southern District of Indiana.

50.     On or about May 29, 2018, Marcum drafted and LACOURSE signed a document that falsely stated that the machine guns were in the possession of Marcum for repair or testing purposes.

51.     On or about July 6, 2018, Marcum paid by check approximately $18,950.00 to H&K Distributor 1 for the ten H&K MP7A2 submachineguns.

52.     On or about August 6, 2018, Marcum deposited into First Financial Bank account x7019 a check from Buyer 2 in the amount of $6,000.00 for one-half of the purchase price of H&K MP7A2 submachinegun serial number 164-027666, which Marcum had sold to Buyer 2.

53.     On or about August 3, 2018, Marcum prepared and submitted an application for tax free transfer of a firearm (ATF Form 5), which LACOURSE signed, to transfer the H&K MP7A2 submachinegun serial number 164-027666 from the Addyston Police Department to Buyer 2.   The application caused ATF NFA Branch to approve the transfer.

54.     On or about September 13, 2018, Marcum shipped the H&K MP7A2 submachinegun serial number 164-027666 from the Southern District of Indiana to Buyer 2 in South Dakota.

55.     On or about September 20, 2018, Marcum deposited into First Financial Bank account x7019 another check from Buyer 2 in the amount of $6,000.00 for the other half of the purchase price of H&K MP7A2 submachinegun serial number 164-027666, which Marcum had sold to Buyer 2.

### *False Demonstration Letters*

56.     On or about the following dates, among others, Marcum drafted and LACOURSE signed letters on Addyston Police Department letterhead, which were submitted to the ATF NFA Branch and falsely stated that the Addyston Police Department sought a demonstration of machine guns:

| Approximate Date | Addressee | Machine Guns Requested for Demonstration to Addyston Police Department |
|---|---|---|
| November 25, 2015 | Petty / Tri-State Guns and Custom Works | FN Herstal, Scar 16 CQC with a 10" barrel in 5.56mm black model #98721 |
| November 25, 2015 | Marcum / Marcum Firearms | FN Herstal, Scar 16 CQC with a 10" barrel in 5.56mm black model #98721 |

| Approximate Date | Addressee | Machine Guns Requested for Demonstration to Addyston Police Department |
|---|---|---|
| May 18, 2016 | Petty / Tri-State Guns and Custom Works | CZ Scorpion Evo 3 A1; 9mm |
| May 18, 2016 | Marcum / Marcum Firearms | CZ Scorpion Evo 3 A1; 9mm<br>CZ 805 Bren A1; 9mm |
| October 20, 2017 | Marcum / Police Supply Armory | 2 H&K MP5A3 9MM<br>2 H&K MP5SD3 9MM<br>2 Colt SMG 9MM<br>2 Colt M4 5 56MM |
| October 20, 2017 | Petty / Tri-State Guns and Custom Works | 2 H&K MP5N 9MM<br>2 H&K MP5SD3 9MM<br>2 Colt SMG 9MM<br>2 H&K MP5A3 9MM<br>2 Colt M4 5 56MM |
| December 15, 2017 | Marcum / Police Supply Armory | 2 FN M249SAW 5.56MM<br>2 FN M249 Para 5.56MM<br>M2HB QCB 12.7mm x 99<br>FN M240L 7.62mm<br>SCAR 16 5.56x45mm Blk 10-in CQC<br>SCAR 16 5.56x45mm FDE 14-in<br>SCAR 17 7.62x51mm FDE 16-in |
| December 15, 2017 | Marcum / Marcum Firearms | 2 FN M249SAW 5.56MM<br>2 FN M249 Para 5.56MM<br>M2HB QCB 12.7mm x 99<br>FN M240L 7.62mm<br>SCAR 16 5.56x45mm Blk 10-in CQC<br>SCAR 16 5.56x45mm FDE 14-in<br>SCAR 17 7.62x51mm FDE 16-in |
| August 3, 2018 | Marcum / Marcum Firearms | 2 Kriss USA INC Vector SMG 9MM<br>2 H&K G36KE 5.56MM<br>2 H&K HK53A2 5.56MM<br>2 FN F2000 5.56MM |
| September 17, 2018 | Marcum / Marcum MFG | 1 Kriss USA INC Vector SMG 9MM<br>1 Kriss USA INC Vector SMG 45 ACP<br>2 Colt M16A3 5.56MM<br>2 H&K G36KE 5.56MM<br>2 H&K MP5SD3 9MM<br>2 H&K G36KE1 5.56MM |

*Payments to LACOURSE*

57.     On or about the following dates, Marcum issued checks payable to LACOURSE in

the following amounts for LACOURSE's share of the proceeds of the sales of machine guns:

| Approximate Date | Amount |
|---|---|
| March 3, 2016 | $130.00 |
| April 4, 2016 | $300.00 |
| June 16, 2016 | $100.00 |
| September 22, 2016 | $235.00 |
| December 9, 2016 | $200.00 |
| March 6, 2017 | $940.00 |
| July 10, 2017 | $1,920.00 |
| October 3, 2017 | $1,100.00 |
| January 3, 2018 | $2,100.00 |
| August 4, 2018 | $2,846.80 |
| October 23, 2018 | $1,660.00 |

All of which is in violation of Title 18, United States Code, Section 371 and Sections

924(a)(1)(A) and 1001(a)(2).

**COUNTS 2–7**
**False Statements in Records Maintained by Federal Firearms Licensee**
**18 U.S.C. §§ 924(a)(1)(A) and 2**

58.     On or about each of the following dates, within the Southern District of Indiana and elsewhere, the defendant

**DORIAN LACOURSE,**

did knowingly and willfully make and cause to be made false statements and representations with respect to information, under Chapter 44 of Title 18 of the United States Code, required to be kept in the records of individuals licensed under Chapter 44, relating to the acquisition of firearms, to wit:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 2 | August 4, 2016 | Letter on Addyston Police Department letterhead signed by LACOURSE requesting Addyston Police Department's purchase of eight H&K MP7A1 submachineguns. |
| 3 | August 9, 2016 | Document on Addyston Police Department letterhead titled "End User Certificate (EUC)," which was addressed to Heckler & Koch GmbH in Germany, regarding purchase of eight H&K MP7A1 submachineguns by Addyston Police Department. |
| 4 | August 26, 2016 | Letter on Addyston Police Department letterhead signed by LACOURSE requesting Addyston Police Department's purchase of eight H&K MP7A1 submachineguns. |
| 5 | March 16, 2017 | Letter on Addyston Police Department letterhead signed by LACOURSE requesting Addyston Police Department's purchase of ten H&K MP7A2 submachineguns. |
| 6 | March 21, 2017 | Letter on Addyston Police Department letterhead signed by LACOURSE requesting Addyston Police Department's purchase of ten H&K MP7A2 submachineguns. |
| 7 | April 4, 2017 | Document on Addyston Police Department letterhead titled "End User Certificate (EUC)," which was addressed to Heckler & Koch GmbH in Germany, regarding purchase of ten H&K MP7A2 submachineguns by Addyston Police Department. |

Each of which is in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

18

## COUNTS 8–17
### False Statements to Bureau of Alcohol, Tobacco, Firearms, and Explosives
### 18 U.S.C. §§ 1001(a)(2) and 2

59.     On or about each of the following dates, within the Southern District of Indiana and elsewhere, the defendant

### DORIAN LACOURSE,

did knowingly and willfully make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, namely the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), false writing and documents, namely letters on Addyston Police Department letterhead requesting firearm demonstrations of machine guns (demonstration letters) from LACOURSE, knowing the same to contain a material false, fictitious, or fraudulent statement because LACOURSE knew that in fact no demonstration was going to occur, to wit:

| Count | Approximate Date | Addressee | Machine Guns Requested for Demonstration to Addyston Police Department |
|-------|------------------|-----------|-----------------------------------------------------------------------|
| 8 | November 25, 2015 | Petty / Tri-State Guns and Custom Works | FN Herstal, Scar 16 CQC with a 10" barrel in 5.56mm black model #98721 |
| 9 | November 25, 2015 | Marcum / Marcum Firearms | FN Herstal, Scar 16 CQC with a 10" barrel in 5.56mm black model #98721 |
| 10 | May 18, 2016 | Petty / Tri-State Guns and Custom Works | CZ Scorpion Evo 3 A1; 9mm |
| 11 | May 18, 2016 | Marcum / Marcum Firearms | CZ Scorpion Evo 3 A1; 9mm CZ 805 Bren A1; 9mm |

| Count | Approximate Date | Addressee | Machine Guns Requested for Demonstration to Addyston Police Department |
|---|---|---|---|
| 12 | October 20, 2017 | Marcum / Police Supply Armory | 2 H&K MP5A3 9MM<br>2 H&K MP5SD3 9MM<br>2 Colt SMG 9MM<br>2 Colt M4 5 56MM |
| 13 | October 20, 2017 | Petty / Tri-State Guns and Custom Works | 2 H&K MP5N 9MM<br>2 H&K MP5SD3 9MM<br>2 Colt SMG 9MM<br>2 H&K MP5A3 9MM<br>2 Colt M4 5 56MM |
| 14 | December 15, 2017 | Marcum / Police Supply Armory | 2 FN M249SAW 5.56MM<br>2 FN M249 Para 5.56MM<br>M2HB QCB 12.7mm x 99<br>FN M240L 7.62mm<br>SCAR 16 5.56x45mm Blk 10-in CQC<br>SCAR 16 5.56x45mm FDE 14-in<br>SCAR 17 7.62x51mm FDE 16-in |
| 15 | December 15, 2017 | Marcum / Marcum Firearms | 2 FN M249SAW 5.56MM<br>2 FN M249 Para 5.56MM<br>M2HB QCB 12.7mm x 99<br>FN M240L 7.62mm<br>SCAR 16 5.56x45mm Blk 10-in CQC<br>SCAR 16 5.56x45mm FDE 14-in<br>SCAR 17 7.62x51mm FDE 16-in |
| 16 | August 3, 2018 | Marcum / Marcum Firearms | 2 Kriss USA INC Vector SMG 9MM<br>2 H&K G36KE 5.56MM<br>2 H&K HK53A2 5.56MM<br>2 FN F2000 5.56MM |
| 17 | September 17, 2018 | Marcum / Marcum MFG | 1 Kriss USA INC Vector SMG 9MM<br>1 Kriss USA INC Vector SMG 45 ACP<br>2 Colt M16A3 5.56MM<br>2 H&K G36KE 5.56MM<br>2 H&K MP5SD3 9MM<br>2 H&K G36KE1 5.56MM |

Each of which is in violation of Title 18, United States Code, Sections 1001 and 2.

## FORFEITURE ALLEGATION

60.     The allegations contained in Counts 1 through 8 of this Indictment are re-alleged

and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United

States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

61.     Upon conviction of a violation of the offenses in violation of Title 18, United States

Code, Sections 371 and 924(a)(1)(A) and 2 set forth in Counts 1 through 8 of this Indictment,

### DORIAN LACOURSE,

the defendant herein, shall forfeit to the United States of America, pursuant to Title 18, United

States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), the following

firearms, ammunition, and firearms-related property:

| No. | Manufacturer: | Model: | Serial Number: | Caliber: |
|-----|---------------|--------|----------------|----------|
| 1 | Brader Arms | XS Sear | XS19 | N/A |
| 2 | Brader Arms | XS Sear | XS25 | N/A |
| 3 | Colt | M4 | A0200758 | .223 |
| 4 | Colt | M4 | A0200751 | .223 |
| 5 | Colt | M16A2 | A0091895 | 5.56 |
| 6 | Colt | M16A2 | A0091833 | 5.56 |
| 7 | COLT | M4 | A0200763 | 5.56 |
| 8 | COLT | M4 | A0200781 | .223 |
| 9 | CZ | CZ 805 Bren | B143067 | 5.56 |
| 10 | CZ | CZ 805 Bren | B378545 | 5.56 |
| 11 | CZ | Scorpion Evo 3 A1 | C488034 | 9mm |
| 12 | CZ | CZ 805 Bren | B445106 | 5.56 |
| 13 | CZ | CZ 805 Bren | B589847 | 5.56 |
| 14 | CZ | CZ Bren 2 | C524540 | 5.56 |
| 15 | CZ | CZ 805 Bren | B444527 | 5.56 |
| 16 | CZ | CZ Bren 2 | C524550 | 5.56 |
| 17 | CZ | CZ 805 Bren | B075248 | 5.56 |
| 18 | CZ | Scorpion Evo 3 A1 | C549245 | 9mm |
| 19 | Glock | 17 | ACHE848 | 9mm |
| 20 | Glock | 17 | ACHE842 | 9mm |

| No. | Manufacturer: | Model: | Serial Number: | Caliber: |
|-----|---------------|--------|----------------|----------|
| 21 | FN | P90 | FN026470 | 5.7x28mm |
| 22 | FN | PS90 | FN115727 | 5.7x28mm |
| 23 | FN | PS90 | FN118595 | 5.7x28mm |
| 24 | FN | F2000 | 38004 | .223 |
| 25 | FN | F2000 | 38008 | .223 |
| 26 | FN | F2000 | 38007 | .223 |
| 27 | FN | F2000 | 43517 | .223 |
| 28 | FN | F2000 | 43518 | .223 |
| 29 | FN | SCAR-SC | SC000290 | Multi |
| 30 | FN | SCAR-17 | H012000 | 7.62x51mm |
| 31 | FN | SCAR-16 | L013763 | 5.56 |
| 32 | FN | M249 SAW | C14241 | 5.56 |
| 33 | FN | M249 SAW | C14213 | 5.56 |
| 34 | FN | M249 SAW | C14237 | 5.56 |
| 35 | FN | M249 SAW | C14238 | 5.56 |
| 36 | FN | M249 SAW | C14242 | 5.56 |
| 37 | FN | M249 SAW | C14267 | 5.56 |
| 38 | FN | M249 SAW | C14327 | 5.56 |
| 39 | FN | SCAR 16 | L013765 | 5.56 |
| 40 | FN | SCAR 16 | L013766 | 5.56 |
| 41 | FN | SCAR 16 | L013442 | 5.56 |
| 42 | FN | SCAR 16 | L013443 | 5.56 |
| 43 | FN | SCAR 16 | L013354 | 5.56 |
| 44 | FN | P90 | FN026552 | 5.7x28mm |
| 45 | FN | P90 | FN026471 | 5.7x28mm |
| 46 | FN | P90 | FN026582 | 5.7x28mm |
| 47 | FN | P90 | FN026581 | 5.7x28mm |
| 48 | H&K | G36KE | 84005426 | 5.56 |
| 49 | H&K | G36KE | 841229 | 5.56 |
| 50 | H&K | G36 | 83001251 | 5.56 |
| 51 | H&K | G36KE | 84003151 | 5.56 |
| 52 | H&K | G36KE | 84003171 | 5.56 |
| 53 | H&K | G36C | 85014632 | 5.56 |
| 54 | H&K | G36C | 85000235 | 5.56 |
| 55 | H&K | MP5 | 691555 | .40 cal |
| 56 | H&K | UMP 40 | 69674 | .40 cal |
| 57 | H&K | UMP 45 | 162003762 | .40 cal |

| No. | Manufacturer: | Model: | Serial Number: | Caliber: |
|---|---|---|---|---|
| 58 | H&K | UMP 45 | 163001751 | .45 ACP |
| 59 | H&K | UMP 45 | 163001994 | .45 ACP |
| 60 | H&K | MP5 | 691481 | .40 cal |
| 61 | H&K | MP5 | 62366213 | 9mm |
| 62 | H&K | MP5 | 62366212 | 9mm |
| 63 | H&K | MP5 | S97822 | 9mm |
| 64 | H&K | MP5 | 63105155 | 9mm |
| 65 | H&K | MP5 | 6398954 | 9mm |
| 66 | H&K | MP5K | 42474911K | 9mm |
| 67 | H&K | HK53 | 76115902 | 5.56 |
| 68 | H&K | MP7 | 164027671 | 4.6 cal |
| 69 | H&K | MP5 | 62334213 | 9mm |
| 70 | H&K | MP5 | 62344846 | 9mm |
| 71 | H&K | MP5 | 62334214 | 9mm |
| 72 | H&K | MP5 | 62338037 | 9mm |
| 73 | H&K | UMP 40 | 162003759 | .40 cal |
| 74 | H&K | MP5 | 62386425 | 9mm |
| 75 | H&K | UMP 9 | 162003761 | 9mm |
| 76 | H&K | MP5 9 | 62334215 | 9mm |
| 77 | H&K | G36KE | 84003168 | 5.56 |
| 78 | H&K | MP7 | 164027672 | 4.6x30mm |
| 79 | H&K | MP7 | 164027673 | 4.6x30mm |
| 80 | H&K | MP7 | 164027674 | 4.6x30mm |
| 81 | H&K | MP5 | 62334225 | 9mm |
| 82 | H&K | MP5 | 6398953 | 9mm |
| 83 | IWI | Tavor | 48216494 | 5.56 |
| 84 | IWI | Tavor 21 | 48302872 | 5.56 |
| 85 | IWI | Tavor x95 SMG | 48216487 | 9mm |
| 86 | IWI | Galil | 48230945 | .223 |
| 87 | IWI | Galil | 48230944 | .223 |
| 88 | IWI | Galil | 47103916 | .223 |
| 89 | KRISS USA INC. | Vector | 919S001225 | 9mm |
| 90 | KRISS USA INC. | Vector | 919S001228 | 9mm |
| 91 | KRISS USA INC. | Vector | 45S000890 | .45 ACP |
| 92 | KRISS USA INC. | Vector | 10P002277 | 9mm |
| 93 | KRISS USA INC. | Vector | 919S001224 | 9mm |
| 94 | Reaper Ops | ST15 | NSL152777 | Multi |

| No. | Manufacturer: | Model: | Serial Number: | Caliber: |
|-----|---------------|--------|----------------|----------|
| 95 | Rock Creek Gun | N/A | 99297 | 9mm |
| 96 | Ruger | AC556 | 19201031 | .223 |
| 97 | Sig Sauer | SIG 516 | 21A001565 | 5.56 |
| 98 | Sig Sauer | SIG 516 | 21A001566 | 5.56 |
| 99 | Sig Sauer | MPX | 62B029933 | 9mm |
| 100 | Steyer | MPI 81 | 41765 | 9mm |
| 101 | Marcum | ST15 | NSL156152 | Multi |
| 102 | Marcum | ST15 | NSL156151 | Multi |
| 103 | Marcum | ST15 | SAR55780 | Multi |
| 104 | Marcum | Ruger 10/22 | 01 / 001230639 | .22 LR |
| 105 | Marcum | Ruger 10/22 | 2 / 0012-18938 | .22 LR |
| 106 | Marcum | Zenith Firearms | T062418BH00573 | 9mm |
| 107 | Marcum | WASR-10 | A15622417 | 7.62x39mm |

| No. | Description |
|-----|-------------|
| 108 | FN M249 SAW barrels and miscellaneous accessories |
| 109 | SS190 AP Ammunition 5.7mm (25 cases (52,500 rounds)) |
| 110 | Marcum Full Automatic Trigger Pack for Kriss Vector (SN 1) |

62.   If any of the property described above, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

63.    In keeping with the foregoing, it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of all forfeitable property as described above.

All of which is pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

JOHN E. CHILDRESS
Acting United States Attorney

By:

Nicholas J. Linder
William L. McCoskey
Assistant United States Attorneys